

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*P. Michael Cunningham*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4884*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*
*TTY/TDD: 410-962-4462*
*michael.cunningham@usdoj.gov*

March 2, 2012

Teresa Whalen, Esquire
801 Wayne Avenue, Ste. 400
Silver Spring, Maryland 20910

    Re:   United States v. Warren Delano Williams
           <u>Criminal No. CCB-09-0260</u>

Dear Ms. Whalen:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **March 2, 2012**, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offenses of Conviction</u>

      1.    The Defendant agrees to plead guilty to Count Seventeen (17) of the Superseding Indictment now pending against him, which charges him with bank robbery in violation of 18 U.S.C. § 2113(a). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offenses</u>

      2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial are as follows:

      a.    That on or about April 21, 2009, in the District of Maryland, the Defendant intentionally took from the person, or presence of the person, money or property;

      b.    The money or property belonged to, or was in the possession of, a federally insured bank at the time of the taking; and

      c.    The Defendant took the money or property by means of force and

violence.

## Penalties

3.  The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: twenty years imprisonment; a $250,000 fine; and a period of supervised release of three (3) years. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.  The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a.  If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent and that presumption could be overcome only by proof beyond a reasonable doubt.

    c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his

---

[1]  Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

-2-

defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind related to his guilt or innocence, and the Court will find the Defendant guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the following Statement of Facts, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

        a.      On December 20, 2008, the Defendant, Warren Delano Williams, entered Subway, a restaurant located at 210 North Highland Avenue in Baltimore, Maryland. The Defendant

was armed with a handgun, which he pointed at an employee. The Defendant took $237 in proceeds from Subway's business activities. Subway conducted its business in and affecting interstate commerce in that many of the foods and beverages sold to its customers were obtained from outside the State of Maryland and because the business was operated as part of an interstate chain of restaurants.

On December 22, 2008, the Defendant entered International House of Pancakes ("IHOP"), a restaurant located at 1557 Merritt Boulevard in Baltimore, Maryland. The Defendant was armed with a handgun, which he pointed at an employee. The Defendant took $710 in proceeds from IHOP's business activities. IHOP conducted its business in and affecting interstate commerce in that many of the foods and beverages sold to its customers were obtained from outside the State of Maryland and because the business was operated as part of an interstate chain of restaurants.

On December 30, 2008, the Defendant entered Payless Shoe Source, a retail business located at 1417 Merritt Boulevard in Baltimore, Maryland. The Defendant was armed with a handgun, which he pointed at an employee. The Defendant took $185 in proceeds from Payless Shoe Source's business activities. Payless Shoe Source conducted its business in and affecting interstate commerce in that many of the products sold to its customers were obtained from outside the State of Maryland and because the business was operated as part of an interstate chain of stores.

On January 2, 2009, the Defendant entered High's Dairy Store ("High's"), a retail business located at 7900 Wise Avenue in Baltimore, Maryland. The Defendant was armed with a handgun, which he pointed at an employee. The Defendant took $407 in proceeds from High's business activities. High's conducted its business in and affecting interstate commerce in that many of the foods and other products sold to its customers were obtained from vendors and distribution centers outside the State of Maryland.

On January 16, 2009, the Defendant entered Family Dollar, a retail business located at 1725 Dundalk Avenue in Baltimore, Maryland. The Defendant was armed with a handgun, which he pointed at an employee. The Defendant took $877 in proceeds from Family Dollar's business activities. Family Dollar conducted its business in and affecting interstate commerce in that many of the products sold to its customers were obtained from vendors and distribution centers outside the State of Maryland and because the business was operated as part of an interstate chain of stores.

On January 26, 2009, the Defendant again entered IHOP, a restaurant located at 1557 Merritt Boulevard in Baltimore, Maryland. The Defendant was armed with a handgun, which he pointed at an employee. The Defendant took an amount of United States currency, which was proceeds from IHOP's business activities. IHOP conducted its business in and affecting interstate commerce in that many of the foods and beverages sold to its customers were obtained from outside the State of Maryland and because the business was operated as part of an interstate chain of restaurants.

On March 1, 2009, the Defendant again entered High's, a retail business located at 7900 Wise Avenue in Baltimore, Maryland. The Defendant was armed with a handgun, which he pointed at an employee. The Defendant took $121 in proceeds from High's business activities. High's conducted its business in and affecting interstate commerce in that many of the foods and other products sold to its customers were obtained from vendors and distribution centers outside the State of Maryland.

On March 4, 2009, the Defendant entered a Bank of America branch located at 7703 Eastern Boulevard in Baltimore, Maryland. The Defendant approached a bank teller and gave the teller a note, which read, "Please give me all the money in 100s, 50s, 20s and 10s. Give me all the money because I have a gun and I'm not playing." The Defendant took $4,750, belonging to and in the care, custody, control, management and possession of the bank. On March 4, 2009, the deposits of the bank were insured by the Federal Deposit Insurance Corporation.

On March 28, 2009, the Defendant entered a Provident Bank branch located at 5225 Belair Road in Baltimore, Maryland. The Defendant approached a bank teller and gave the teller a note, which read, "Give me all the money. I have a gun. No tricks." The Defendant took $2,149, belonging to and in the care, custody, control, management and possession of the bank. On March 28, 2009, the deposits of the bank were insured by the Federal Deposit Insurance Corporation.

On April 21, 2009, the Defendant again entered a Provident Bank branch located at 5225 Belair Road in Baltimore, Maryland. The Defendant approached a bank teller and gave the teller a note, which read, "Give me all your money. No tricks. I have a gun." The Defendant took $1,280, belonging to and in the care, custody, control, management and possession of the bank. On April 21, 2009, the deposits of the bank were insured by the Federal Deposit Insurance Corporation.

On April 21, 2009, officers with the Baltimore County Police Department executed a search and seizure warrant at the Defendant's home, located at 1942 Jasmine Road in Baltimore, Maryland. From the Defendant's bedroom, officers recovered a loaded Llama .45 caliber, semi-automatic pistol, bearing serial number A26920.

b.   With respect to the ~~(total, combined)~~ *Count 17* offense level for ~~Counts One and Two,~~ the parties agree that the stipulated statement of facts contained in paragraph 6(a) would establish that the defendant was guilty of each of the offenses described in that paragraph. Accordingly, this plea agreement will be treated as if the defendant has been convicted of additional counts charging each of those offenses pursuant to U.S.S.G. § 1B1.2(c). The base offense levels for the individual robberies are as follows:

December 20, 2008 robbery ~~(corresponding to the Defendant's conviction of the crime charged in Count One):~~
Base offense level- 20 (U.S.S.G. § 2B3.1(a))

December 22, 2008 robbery
Base offense level- 20
Increase 5 levels because a firearm was brandished (2B3.1(b)(2)(C))
Adjusted offense level - 25

December 30, 2008 robbery
Base offense level- 20
Increase 5 levels because a firearm was brandished (2B3.1(b)(2)(C))
Adjusted offense level - 25

January 2, 2009 robbery
Base offense level- 20
Increase 5 levels because a firearm was brandished (2B3.1(b)(2)(C))
Adjusted offense level - 25

January 16, 2009 robbery
Base offense level- 20
Increase 5 levels because a firearm was brandished (2B3.1(b)(2)(C))
Adjusted offense level - 25

January 26, 2009 robbery
Base offense level- 20
Increase 5 levels because a firearm was brandished (2B3.1(b)(2)(C))
Adjusted offense level - 25

March 1, 2009 robbery
Base offense level- 20
Increase 5 levels because a firearm was brandished (2B3.1(b)(2)(C))
Adjusted offense level - 25

March 4, 2009 bank robbery
Base offense level- 20
Increase 2 levels because the property of a financial institution was taken (2B3.1(b)(1))
Adjusted offense level - 22

March 28, 2008 bank robbery
Base offense level- 20
Increase 2 levels because the property of a financial institution was taken (2B3.1(b)(1))
Adjusted offense level - 22

April 21, 2009 bank robbery
Base offense level- 20
Increase 2 levels because the property of a financial institution was taken (2B3.1(b)(1))

Adjusted offense level - 22

c.  The parties agree that the total number of units attributable to the robberies calculated is 9.5 pursuant to U.S.S.G. § 3D1.4. Accordingly, 5 levels are added to the highest offense level, 25, resulting in an adjusted, combined offense level of 30. At sentencing, this Office will argue that the applicable guideline range is to be governed by U.S.S.G. § 4B1.1(c)(3) because the defendant is a career offender.

d.  This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. In addition, this Office will make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level reduction. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. If the Defendant is a career offender, the applicable guideline range would be ~~188 to 235~~ 151-188 months imprisonment.

7.  The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.  This Office and the Defendant agree that with respect to the calculation of criminal history and advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. ~~If the Defendant intends to seek a sentence outside of the advisory guidelines range, he will notify the Court, the United States Probation Officer and this Office at least ten days in advance of sentencing of the facts or issues he intends to raise pursuant to 18 U.S.C. § 3553(a).~~

Forfeiture

9.  The Defendant understands and agrees that as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm. He forfeits all rights, title, and interest in the following firearm:

one Llama .45 caliber, semi-automatic pistol, bearing serial number A26920.

Plea Pursuant to Rule 11(c)(1)(C)

10.  The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure

-7-

11(c)(1)(C) that a sentence of 168 months imprisonment in the custody of the Bureau of Prisons is the appropriate sentence in this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

11. At the time of sentencing, this Office will recommend a sentence ~~at the high end~~ of ~~the~~ 168 months imprisonment.

12. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), <u>except</u> as follows: the Defendant reserves the right to appeal from any sentence above 168 months, and this Office reserves the right to appeal from any sentence below 168 months.

   c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Court Not a Party

14.   The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Obstruction or Other Violations of Law

15.   The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (a) engages in conduct after the date of this agreement that would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1; (b) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report; or (c) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Restitution

16.   The Defendant agrees to the entry of a Restitution Order for the amounts listed in paragraph 6.a. of this Plea Agreement to the businesses and banks listed in that paragraph. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3853(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in paragraph 6.a. The Defendant further agrees that he will fully disclose to the probation officer and the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in paragraph 6.a. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Entire Agreement

17. This agreement, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant and constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this agreement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: *[signature]*
P. Michael Cunningham
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_____  _____
Date                     Warren Delano Williams

I am Warren Delano Williams's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_____  _____
Date                     Teresa Whalen, Esquire